1
2
3
4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

5
6
7
8
9
10
11
12

Case No. 1:15-cv-03038-MKD

MICH HURST,

                    Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

13
14
15
16
17

        BEFORE THE COURT are the parties' cross-motions for summary judgment.
ECF Nos. 13, 22.  The parties consented to proceed before a magistrate judge.  ECF
No. 21.  The Court, having reviewed the administrative record and the parties'
briefing, is fully informed.  For the reasons discussed below, the Court grants
Defendant's motion (ECF No. 22) and denies Plaintiff's motion (ECF No. 13).

18

## JURISDICTION

19
20

        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER  ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina  v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  *Id*. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the

1    claimant's impairment.  *Id*. § 416.920(a)(4)(ii).  If the claimant suffers from "any

2    impairment or combination of impairments which significantly limits [his or her]

3    physical or mental ability to do basic work activities," the analysis proceeds to step

4    three.  *Id*. § 416.920(c).  If the claimant's impairment does not satisfy this severity

5    threshold, however, the Commissioner must find that the claimant is not disabled.

6    *Id.*

7        At step three, the Commissioner compares the claimant's impairment to

8    severe impairments recognized by the Commissioner to be so severe as to preclude a

9    person from engaging in substantial gainful activity.  *Id*. § 416.920(a)(4)(iii).  If the

10   impairment is as severe as or more severe than one of the enumerated impairments,

11   the Commissioner must find the claimant disabled and award benefits.  *Id*.

12   § 416.920(d).

13       If the severity of the claimant's impairment does not meet or exceed the

14   severity of the enumerated impairments, the Commissioner must pause to assess the

15   claimant's "residual functional capacity."  Residual functional capacity (RFC),

16   defined generally as the claimant's ability to perform physical and mental work

17   activities on a sustained basis despite his or her limitations, *id*. § 416.945(a)(1), is

18   relevant to both the fourth and fifth steps of the analysis.

19       At step four, the Commissioner considers whether, in view of the claimant's

20   RFC, the claimant is capable of performing work that he or she has performed in the

ORDER  ~ 4

past ("past relevant work").  *Id*. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  *Id*. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  *Id*. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  *Id*. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Lockwood v. Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff protectively applied for supplemental security income (SSI) benefits and for disability insurance benefits (DIB) on April 26, 2011, alleging a disability onset date of February 17, 2009.  Tr. 282-83.  The applications were denied initially, Tr. 174-77, and on reconsideration, Tr. 154-55.   Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on May 1, 2013.  Tr. 43-67.  On June 24, 2013, the ALJ rendered a decision denying Plaintiff's claim.  Tr. 21-34.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his DIB claim through December 31, 2014.  Tr. 23.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 17, 2009.  Tr. 23.  At step two, the ALJ found that Plaintiff suffers from the following severe impairments: right knee disorder, major depressive disorder, and anxiety disorder.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 25.  The ALJ then concluded that the Plaintiff had the RFC to perform a range of light work.  Tr. 26.  At step four, the ALJ found that Plaintiff is unable to perform his past relevant work.  Tr. 32.  At step five, relying on a vocational expert's testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as hand

packager, assembler, semiconductor bonder, and escort vehicle driver.  Tr. 32-33.

On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the

Social Security Act.  Tr. 33-34.

On January 8, 2015, the Appeals Council denied review, Tr. 1-6, making the

ALJ's decision the Commissioner's final decision for purposes of judicial review.

*See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance income benefits under Title II and supplemental security

income benefits under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff

raises the following three issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claim;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ's RFC finding is supported by substantial evidence.

## DISCUSSION

**A.  Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear

and convincing reasons for discrediting his symptom claims.  ECF No. 13 at 22-26.

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

2   924 (9th Cir. 2002)).

3        In making an adverse credibility determination, the ALJ may consider, *inter*

4   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

5   claimant's testimony or between his testimony and his conduct; (3) the claimant's

6   daily living activities; (4) the claimant's work record; and (5) testimony from

7   physicians or third parties concerning the nature, severity, and effect of the

8   claimant's condition. *Thomas*, 278 F.3d at 958-59.

9        This Court finds the ALJ provided several specific, clear, and convincing

10   reasons for finding Plaintiff's statements concerning the intensity, persistence, and

11   limiting effects of his symptoms "are not entirely credible." Tr. 27.

12        *1. Inconsistent Statements*

13        First, the ALJ found Plaintiff has inconsistently reported migraine headaches

14   to providers, and his testimony in this regard is also inconsistent with the medical

15   record. Tr. 24. The ALJ noted that Plaintiff:

16   testified to problems with migraines. He stated that he has had migraines
     daily for months. His symptoms started six months prior, but he has had
17   migraines all his life. [Tr. 58.] However, the claimant's testimony is
     inconsistent with the record. The medical evidence shows that the claimant's
18   migraines are intermittent and treated as non-severe. In addition, the claimant
     has made inconsistent reports about his migraines/headaches. For example,
19   in March 2011, the claimant reported debilitating headaches since he ran out
     of his contact lenses. [Tr. 449.] In August 2011, the claimant reported he had
20   one headache per week. [Tr. 680.] However, in November 2011, the
     claimant denied headaches. [Tr. 1024.] In January 2013, the claimant

reported that he had not had a migraine in five to six years. [Tr. 1264.] On the contrary, later that same month, the claimant reported that he had not had a migraine in the last three to four years. [Tr. 1331.]

Tr. 24.

An ALJ may support his adverse credibility finding by citing to inconsistencies in the claimant's testimony, prior inconsistent statements and general inconsistencies in the record. *Thomas*, 278 F.3d at 958-59 (inconsistencies in the claimant's testimony is properly considered); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2016) (prior inconsistent statements may be considered); *Molina*, 674 F.3d at 1112 (An ALJ may support an adverse credibility finding by citing to general inconsistencies in the record).

   *2.  Medical Evidence Regarding Knee Impairment*

Second, the ALJ found that Plaintiff's complaints regarding his right knee exceeded objective and physical exam findings. Tr. 27. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

As the ALJ noted, the physical exam findings indicate no more than mild to moderate limitations. Tr. 27-28. The record supports this finding. For instance, in March 2009, Plaintiff had significant inflammatory reaction to palpitation, but

1    Plaintiff was reportedly working "pretty much his regular workplace responsibilities

2    at that time." Tr. 27 (citing Tr. 556). An examination in May 2009 revealed a full

3    range of motion of the right knee with no restriction and some tenderness noted;

4    however, an MRI showed no significant pathology. Tr. 547. The following month,

5    on physical examination, Plaintiff had unrestricted range of motion in his right knees

6    and was reportedly working full-time, 50 to 60 hours a week. Tr. 27, 545.

7    Because an ALJ may discount pain and symptom testimony based on lack of

8    medical evidence, as long as it is not the sole basis for discounting a claimant's

9    testimony, the ALJ did not err when he found Plaintiff's complaints exceed and are

10   not supported by objective and physical exam findings.

11         3. *Reason for Stopping Work*

12         Third, the ALJ noted Plaintiff stopped working because he was laid off in

13   August 2009 due to a lack of work, not because of his impairments, which suggests

14   he might have continued working if he had not been laid off. Tr. 28, 48-49. When

15   considering a claimant's contention that he cannot work because of his impairments,

16   it is appropriate to consider whether the claimant has not worked for reasons

17   unrelated to his alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th

18   Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than

19   because he was injured, was a clear and convincing reason to find him not credible).

20         Plaintiff challenges this reason, contending that the ALJ's statement that this

ORDER ~ 11

1   "suggests he might have continued working otherwise," is equivocal, rather than

2   clear and convincing, evidence.  ECF No. 26 at 2 (citing Tr. 28).  In support,

3   Plaintiff cites his own report of pain in June 2009.  ECF No. 26 at 2-3 (citing Tr.

4   545).  The ALJ was not required to credit Plaintiff's subjective reporting as the ALJ

5   found, for other reasons, that Plaintiff's reporting was less than fully credible.  When

6   considered in context, Plaintiff's eventual refusal to work a job his treating doctors

7   felt he could perform (Tr. 441, 434), indicates Plaintiff's reason for leaving his last

8   job was a permissible factor for the ALJ to consider when assessing credibility.

9        4.  *Lack of Compliance with Medical Treatment*

10       Fourth, the ALJ discounted Plaintiff's credibility because Plaintiff was

11   "discharged from rehabilitation [by his treating doctor] for lack of compliance."  Tr.

12   28.  Failing to comply with medical treatment casts doubt on a claimant's allegations

13   of disabling impairment, since one with severe impairments would presumably

14   follow prescribed medical treatment to obtain relief.  Accordingly, failing to follow a

15   prescribed course of medical treatment is a permissible reason for discounting

16   Plaintiff's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (An

17   ALJ may consider a claimant's unexplained or inadequately explained failure to

18   follow a prescribed course of treatment when assessing a claimant's credibility.)

19   (citations omitted).  The ALJ noted this lack of compliance included missed

20   appointments, cancelations, and no shows.  Tr. 28, 842; *see also* Tr.

635 (claimant did not return to physical therapy; noting letter of discharge by Dr. Kite, dated June 1, 2011, due to Plaintiff's noncompliance); Tr. 724 (noting no-showed multiple times at physical therapy); Tr. 726 (in December 2009, Dr. Kite asks Plaintiff why he failed to return since August; Plaintiff decided "he was going to have to live with his knee the way it is," so he did not reschedule).

### 5. Failure to Seek Medical Treatment

Fifth, the ALJ discredited Plaintiff because he testified that he had not seen a doctor in approximately a year and was not taking any medication. Tr. 28. The ALJ found both factors indicated that Plaintiff's knee pain was not as severe as alleged. Tr. 28, 50. The amount and type of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Burch*, 400 F.3d at 681. An ALJ may rely on an unexplained or inadequately explained failure to seek treatment when assessing a claimant's credibility. *Tommasetti*, 533 F.3d at 1039.

### 6. Daily Activities

Sixth, the ALJ found that Plaintiff's activities of daily living are inconsistent with allegedly disabling limitations. Tr. 28-29. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see*

*also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  Here, the ALJ found, for example, that in April 2010, Plaintiff reported he took a road trip to the Oregon coast.  Tr. 28, 522. Plaintiff reported in May 2011 he is independent in his personal care needs, performed household chores, drove, went fishing with a friend, and played games weekly. Tr. 28, 346-49.  In August 2011, Plaintiff reported that he performed his own activities of daily living without assistance.  Tr. 28.  In November 2011, Plaintiff reported that he walked local roads looking for agates.  Tr. 29, 970. Plaintiff himself noted that the biggest problem that keeps him from working are mental, not physical, limitations.  Tr. 50.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

### 7. *Evidence Regarding Mental Health Impairment*

Seventh, the ALJ notes Plaintiff indicated that his biggest problem that keeps him from working is mental, not physical. Tr. 29, 50.  However, in contrast to

1   Plaintiff's allegations of disabling anxiety and depression, the ALJ found that mental

2   status examinations yielded findings that were generally mild.  Tr. 29.  In addition,

3   even though symptoms of mental impairment improved with treatment, Plaintiff

4   "denied taking any mental health medications."  Tr. 29.  Subjective testimony cannot

5   be rejected solely because it is not corroborated by objective medical findings, but

6   medical evidence is a relevant factor in determining the severity of a claimant's

7   impairments.  *Rollins*, 261 F.3d at 857; *see also Burch*, 400 F.3d at 681.

8        The ALJ found that mental status exam findings were indeed generally mild.

9   Tr. 29-30 (citing 969-70 ("Alert and oriented x3. Affect is appropriate. The patient is

10  a good historian and cooperative ... pleasant ... affect is normal. General cognition

11  appears to be entirely normal . . . [H]e is not obviously anxious in my office. . . His

12  affect today is normal."); Tr. 1012 (oriented to person, place and time. Normal

13  affect.); Tr. 1266 (same)).

14       Plaintiff alleges that the ALJ "failed to consider" four other mental status

15  exams and implies that, had the ALJ correctly credited this evidence, the credibility

16  determination would be different.  ECF No. 13 at 23-24 (citing Tr. 452, 465, 471

17  (Dr. Kite), Tr. 649-50 (Dr. Friedman)).  In fact, this evidence does not diminish the

18  ALJ's credibility finding. First, all four of the cited records cover only a two month

19  period, which records do not undermine the ALJ's finding that, over a three year

20  period, Plaintiff's mental status exam findings were generally mild.  For example, on

January 24, 2011, Dr. Kite observed that Plaintiff's "affect [is] blunted and anxious." Dr. Kite told Plaintiff to restart prescribed psychotropic medications at a lower dose. Tr. 471.  Next, on February 7, 2011, Dr. Kite observed Plaintiff's "[a]ffect is blunted."  Again Dr. Kite changed Plaintiff's prescribed psychotropic medication. Tr. 465.  On March 1, 2011, Dr. Kite noted that Plaintiff is "emotionally labile and intermittently tearful today;" Plaintiff stated that he is "impoverished without income." Tr. 452.  Each clearly represents no more than a snapshot in time that did not last; as Dr. Kite later indicated, Plaintiff was able to work as a fruit sorter.  Tr. 441.

With respect to Dr. Friedman's February 11, 2011, evaluation cited by Plaintiff, Dr. Friedman notes that Plaintiff is "friendly, cooperative but anxious appearing;" his presentation is scattered and mildly circumstantial; insight is compromised and judgment is "questionable."  Tr. 649-50.  Yet, Dr. Friedman opined in the same evaluation that once Plaintiff's symptoms were treated, "he should be able to return back to gainful employment in a step-wise fashion."  Tr. 651.  The ALJ's credibility assessment was not undermined by Dr. Friedman's opinion that Plaintiff suffered treatable mental conditions.

### 8.  Improvement with Treatment

The ALJ further discredited Plaintiff because the treatment notes show Plaintiff's symptoms improved with prescribed psychotropic medication.  Tr. 29.

An ALJ may support his adverse credibility finding if the evidence shows a claimant's symptoms can be controlled effectively by medication. *See Warre v. Comm'r of Soc. Sec. Admin.*, 429 F.3d 1001, 1006 (9th Cir. 2006) (symptoms controlled effectively by medications are not disabling). Here, the ALJ noted that Plaintiff reported in January 2011 that the "Valium has provided much greater stability" and when in effect, he feels "back to himself." Tr. 29, 467. That same month, Dr. Friedman noted Plaintiff's profile showed symptom exaggeration. Tr. 29, 650. In March 2011, Plaintiff reported that his panic attacks were controlled by Valium. Tr. 29, 449. The same month, Plaintiff increased Celexa as planned and is "much less distressed." Tr. 29, 1250.

Plaintiff alleges the ALJ erred when he noted that symptoms of mental impairments showed improvement with medication, because Plaintiff testified he was not taking any mental health medications because of his inability to pay for them. ECF No. 13 at 24, Tr. 29 (citing S.S.R. 82-59).

During the hearing, Plaintiff testified he was not taking psychotropic medication. He also testified, strangely, that he had never been "on medicine for mental health at all," contrary to the medical record. *Cf.* Tr. 50-51, *with* Tr. 471. Although Plaintiff denied taking any mental health medications, the medical record shows Plaintiff told his doctor that Valium helped his panic attacks and that he felt less distressed when Celexa was increased. Tr. 29 (*comparing* Tr. 51 *with* Tr. 449,

631, 1250).  As noted, the ALJ properly relied on Plaintiff's inconsistent statements when assessing Plaintiff's credibility.  *See Molina*, 674 F.3d at 1112 ("[T]he ALJ may rely on inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct.").

Plaintiff alleges that he explained at the hearing that he cannot take over-the-counter medication for his knee due to stomach problems, and he did not obtain medical treatment after he lost his medical insurance.  Plaintiff alleges that because he explained his failure to take medication or obtain treatment, the ALJ erred by relying on these factors when he assessed Plaintiff's credibility.  ECF No. 26 at 4.

However, as noted, the amount and type of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Burch*, 400 F.3d at 681.  It is significant that even when Plaintiff did obtain treatment, he failed to comply with it without explanation. This included being discharged from rehabilitation for lack of compliance and missed appointments, rather than lack of insurance or funds.  Tr. 842.  The ALJ was entitled to draw inferences from the record when he assessed credibility, including the weight to give to Plaintiff's explanations for the lack of treatment and failure to take medication.

*9. Situational Stressors*

The final basis for which the ALJ discredited Plaintiff was that Plaintiff's "mental symptoms appear to relate primarily to situational life stressors," which suggested "a possible secondary gain motive." Tr. 29. An ALJ may consider evidence that a claimant is motived by secondary gain when evaluating credibility. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). Here, the ALJ noted numerous instances where Plaintiff expressed concern to his treatment providers regarding his financial distress. Tr. 29 (citing Tr. 452, 457, 535, 540).[1] As the ALJ noted, however, in April 2011, Plaintiff refused work as a fruit sorter and reported that his wife was able to re-qualify for social security. Tr. 29, 433, 441.

Plaintiff contends that the ALJ impermissibly substituted the ALJ's own judgment for those of Plaintiff's doctors, who had diagnosed significant mental health-related disorders. ECF No. 13 at 24-25. In support, Plaintiff cites to notes generated by various mental health treatment providers. The Court finds that the notations reflect what could be characterized as "situational life stressors," that

---

[1] *See* Tr. 540 (feeling frustrated "over the chronic inflammatory condition of his right knee that he had the impression has got nothing wrong with it"); Tr. 535 (expressing fear and anxiety over his financial situation); Tr. 441 (concerned about being released to work as a fruit sorter because it would be a significant financial drop); Tr. 457 (scattered thought processes and anxiety, fears that he will be returned to work and be unable to perform, and end up on the streets); Tr. 452 (impoverished and without income, reports ongoing severe anxiety with agoraphobia); Tr. 443 (expresses anger and fear over "over his release to return to work as a sorter").

support rather than contradict the ALJ's analysis.  *See, e.g.*, Tr. 465 (Dr. Kite's note

opining that Plaintiff's depression is likely related to his knee injury and slow

recovery); Tr. 482 (same); Tr. 594 (Dr. Kite's note indicating that Plaintiff is having

a little anxiety because of financial insecurity and fear of the future).  Plaintiff's

references do not undermine the ALJ's finding that Plaintiff's symptoms appear

related to or exacerbated by his financial distress.

Here, the ALJ cited numerous properly supported reasons for discrediting

Plaintiff.  Even assuming, *arguendo,* that the ALJ did err in the reasoning related to

financial stressors, any error is harmless because the ALJ's ultimate credibility

finding is adequately supported by substantial evidence. *See Carmickle v. Comm'r*

*Soc. Sec. Admin*., 533 F.3d 1155, 1162-63 (9th Cir. 2008).  In sum, despite

Plaintiff's arguments to the contrary, the ALJ provided several specific, clear, and

convincing reasons for rejecting Plaintiff's testimony.  *See Ghanim*, 763 F.3d at

1163.

**B.  Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the opinions of examining

psychiatrist Jesse McClelland, M.D.; treating physician Bruce Kite, M.D.;

examining physician Michael Friedman, D.O.; and examining physician Kevin

Weeks, M.D.  ECF No. 13 at 9-19.

1    There are three types of physicians: "(1) those who treat the claimant (treating

2  physicians); (2) those who examine but do not treat the claimant (examining

3  physicians); and (3) those who neither examine nor treat the claimant but who

4  review the claimant's file (nonexamining or reviewing physicians)." *Holohan v.*

5  *Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally,

6  a treating physician's opinion carries more weight than an examining physician's,

7  and an examining physician's opinion carries more weight than a reviewing

8  physician's."  *Id*. "In addition, the regulations give more weight to opinions that are

9  explained than to those that are not, and to the opinions of specialists concerning

10  matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

11    If a treating or examining physician's opinion is uncontradicted, an ALJ may

12  reject it only by offering "clear and convincing reasons that are supported by

13  substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

14  "However, the ALJ need not accept the opinion of any physician, including a

15  treating physician, if that opinion is brief, conclusory and inadequately supported by

16  clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th

17  Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

18  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

19  only reject it by providing specific and legitimate reasons that are supported by

20  substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1    *1.  Dr. McClelland*

2    In August 2011, Dr. McClelland conducted a psychological examination of

3    Plaintiff and opined that he could perform simple and repetitive tasks, but would

4    have difficulty with more complex and detailed tasks, accepting instructions from

5    supervisors, performing work on a consistent basis without special or additional

6    instructions, interacting with supervisors, coworkers, and the public, and

7    maintaining regular attendance in the workplace.  Tr. 30, 673-678.

8    The ALJ gave "little weight" to Dr. McClelland's opinion because it relied

9    primarily on Plaintiff's self-reports, particularly his GAF assessment of 27; it was

10   inconsistent with the overall medical evidence of record, including Plaintiff

11   performing relatively well on mental status testing; and the Plaintiff had significant

12   stressors in his life at the time of the assessment, which the ALJ found, calls into

13   question the reliability of Plaintiff's alleged symptoms.  Tr. 30.

14   *a.  Plaintiff's Self-Report of Symptoms*

15   First, a physician's opinion may be rejected if it is based on a claimant's

16   subjective complaints, which were properly discounted.  *Tonapetyan v. Halter*, 242

17   F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999);

18   *Fair*, 885 F.2d at 604.  As discussed above, the ALJ properly discredited Plaintiff's

19   testimony.  A review of the report establishes that the examining physician relied

20   heavily on Plaintiff's subjective complaints.  Tr. 672-78.  Dr. McClelland reviewed

very limited documentation and performed no personality tests.  *See, e.g.*, Tr. 672

(McClelland reviewed only a few records, specifically a one page SSA Form 3368

and some medical clinic notes).  For example, in assessing limitations, Dr.

McClelland stated that Plaintiff's "biggest problem is in terms of interacting with

people and leaving his house."  Plaintiff had told Dr. McClelland that "he cannot be

around people, especially strangers and has essentially shut himself off from the

world."  Tr. 677, 673.[2]

### b.  Medical Evidence

Second, the ALJ found that Dr. McClelland's opinion was inconsistent with

the overall medical record, specifically noting that Plaintiff performed relatively well

on mental status testing.  Tr. 30.  The Plaintiff contends the ALJ's conclusion is too

general to be sustained, and that attempting to supply additional reasons violates the

rule that "a reviewing court, in dealing with a determination or judgment which an

administrative agency alone is authorized to make, must judge the propriety of such

[2] Moreover, clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient.  The scale does not evaluate impairments caused by psychological or environmental factors.  *Morgan,* 169 F.3d at 598.  The Commissioner has explicitly disavowed use of GAF scores as indicators of disability.  "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).  Moreover, the GAF scale is no longer included in the DSM–V.  Accordingly, the ALJ's concern that the Plaintiff's not credible self-report led to a GAF score of 27, and concern that the physician's opinion relied in substantial part on the GAF score, was appropriate.

ORDER  ~ 23

action solely by the grounds invoked by the agency."  ECF No. 13 at 12-13 (citing *Securities & Exchange Comm'r v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) ("if the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline").  It is not error, however, to examine the record to see if it supports the ALJ's reasoning.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.") (quotation and citation omitted).  Here, the ALJ explicitly found that Dr. McClelland's opinion was not supported by the bulk of the evidence.  Accordingly, the Court's examination of the record in this context is not "supplying a ground not invoked" by the ALJ.

Plaintiff alleges that other medical opinions support, rather than contradict, Dr. McClelland's opinion.  Dr. McClelland evaluated Plaintiff in August 2011.  Tr. 672-78.  Plaintiff drove himself to the evaluation.  Plaintiff indicated that he suffered from anxiety and depression, and had never received mental health treatment or medication.  Plaintiff said he has become increasingly isolated, he has panic attacks when he is around people, and he re-experiences post-traumatic stress disorder (PTSD) symptoms related to past traumatic experiences; Plaintiff estimated that this

has lasted about a year.  Dr. McClelland opined that Plaintiff described many symptoms consistent with attention deficit hyperactivity disorder (ADHD).  Tr. 672-74.  With respect to work functioning, Dr. McClelland opined that Plaintiff was capable of simple, repetitive tasks; cognitive problems may impair Plaintiff's ability to accept instruction and work consistently without special or additional instruction; and regular attendance would likely be difficult.  Dr. McClelland opined that Plaintiff lacked the fundamental coping skills to deal with normal levels of stress and "the high levels of stress that he has experienced lately."  Dr. McClelland assessed a GAF of 27, opined that Plaintiff's conditions are treatable but treatment would be difficult, and Plaintiff's prognosis was poor.  Tr.  676-78.

The ALJ correctly concluded that Dr. McClelland's opinion is contradicted by other medical evidence in the record.  On January 26, 2011, Dr. Kite opined: "[t]he patient is not capable, on both physical and emotional psychological basis [sic], to return to work full-time at any gainful employment activity as yet."  ECF No. 13 at 13, Tr. 469.  However, less than a month later, on February 14, 2011, Dr. Kite opined that Plaintiff was capable of working as an agricultural sorter with a sit/stand option.  Dr. Kite opined that in another six months, Plaintiff would be able to return to his previous employment as a welder.  Tr. 456.  In March 2011, Dr. Kite opined Plaintiff's anxiety and depression "would likely subside" once he is independently

1   supporting himself again.  Tr. 435.  Although Plaintiff argues that Dr. Kite's opinion

2   supports his contention of disability, Dr. Kite's opinions (as they reflected Plaintiff's

3   progression over time) do not undermine the ALJ's finding as to Dr. McClelland.

4   Dr. Kite's opinions are also generally consistent with the ALJ's residual functional

5   capacity assessment for a range of light work.  Tr. 26.

6        Other evidence, in addition to Dr. Kite's opinion, supports the ALJ's decision

7   to give Dr. McClelland's opinion less weight.  Dr. Friedman psychiatrically

8   examined Plaintiff in February 2011 – six months before Dr. McClelland.  Dr.

9   Friedman opined that, once Plaintiff's psychological symptoms were treated, "he

10  should be able to return back to gainful employment[.]"  Tr. 651.  Dr. Friedman

11  recommended psychotropic medication and that Plaintiff be treated by a psychiatrist

12  "who is adept at treating patients with a history of significant drug abuse," given

13  Plaintiff's admitted past methamphetamine abuse.  Tr. 652.[3]  Dr. Friedman also

14  noted the MMPI-2 results showed that Plaintiff exaggerated his symptoms.  Tr. 650.

15       Plaintiff suggests that the ALJ should have credited a profile portion of Dr.

16  Friedman's opinion, which states that Plaintiff "appears to experience a florid

17  psychotic process."  ECF No. 13 at 14 (citing Tr. 650).  Significantly, after the

18  profile section of this report, Dr. Friedman points out: "This profile is not congruent

19  ————————————

20  [3] The record shows Plaintiff was hospitalized on July 4, 2010, for symptoms of
    opiate withdrawal, and tested positive for benzodiazepine and cannabinoids.  Tr.
    423-26, 431.

ORDER  ~ 26

with my examination of Mr. Hurst." Tr. 650.  Thus, there was no reason for the ALJ

to credit this portion of the opinion as it does not accurately express Dr. Friedman's

opinion, but is instead a profile that is sometimes characteristic of the people who

answer psychological tests in a fashion similar to Plaintiff.  Dr. Friedman's opinion

overall is consistent with Dr. Kite's.  The ALJ rejected Dr. McClelland's more dire

psychological limitations, in part, in favor of the opinion of Plaintiff's treating

physician, Dr. Kite, and another examining professional, Dr. Friedman.  This was

proper.  *See Orn,* 495 F.3d at 631 ("By rule, the Social Security Administration

favors the opinion of a treating physician over non-treating physicians.").

Moreover, the ALJ specifically noted that Plaintiff performed "relatively

well" on mental status exams, as indicated previously, which is also inconsistent

with Dr. McClelland's more severe assessed symptomology.  Tr. 30.  The ALJ relied

on such exams in 2011, 2012, and 2013.  Tr. 29, 969-70 ("pleasant and

cooperative"[;] normal affect, not obviously anxious); Tr. 1012 ("[g]eneral cognition

appears to be entirely normal");  Tr. 1266 (oriented, normal affect); Tr. 675-76 (Dr.

McClelland's exam: "concentration, persistence and pace within normal limits;"

"polite and cooperative with good eye contact;" "alert and oriented to person, place

and time;" "remote memory seems to be intact;" "abstract thinking [is] intact;"

judgment and insight are "fair").

The ALJ's conclusion that Dr. McClelland's opinion is inconsistent with Plaintiff's reported functioning is reasonable. Dr. McClelland opined that Plaintiff had essentially shut himself off from the world. Tr. 676 (close to agoraphobic state). The record shows, however, that Plaintiff reported he took a road trip vacation with his wife to the Oregon coast (before Dr. McClelland's evaluation but about a year after onset); shopped, drove, cared for pets, spent time with friends, went fishing, walked around his neighborhood, played games, and walked in the local area looking for agates. Tr. 52-53, 346-349, 446, 522, 675, 679, 967, 970.

Because an ALJ is not required to credit an examining doctor's opinion over a treating doctor's opinion, *Lester*, 81 F.3d at 830-31, nor is an ALJ required to credit medical opinions that are unsupported by the records as a whole, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), including a claimant's demonstrated functioning, the ALJ gave specific, legitimate reasons supported by substantial evidence for discrediting Dr. McClelland's opinion.

c. *Reliability Due to Stressors*

Third, the ALJ found that Plaintiff had "significant life stressors at the time of his assessment, which call[ed] into question the reliability of his alleged symptoms." Tr. 30. As the ALJ identified previously, the record is replete with examples supporting his conclusion. Tr. 29 (listing examples).

1    Plaintiff contends that the ALJ substituted his judgment for that of Dr.

2    McClelland.  ECF No. 13 at 16.  Here, Dr. McClellan noted that Plaintiff appeared

3    to have experienced "high levels of stress lately," Tr. 678, in his assessment.  This

4    Court finds that the ALJ's conclusion that Dr. McClellan's opinion reflected

5    Plaintiff's short-term functioning due to situational stressors, but not his longtime

6    functioning, is a reasonable interpretation.  "Where there is conflicting medical

7    evidence, the Secretary must determine credibility and resolve the conflict."

8    *Thomas*, 278 F.3d at 956-57 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

9    Cir. 1992)).  When evidence is susceptible of more than one rational interpretation, it

10   is the ALJ's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639,

11   642 (9th Cir. 1982) (citation omitted).   In reaching his findings, the law judge is

12   entitled to draw inferences logically flowing from the evidence.  *Id*. (citations

13   omitted).

14        Here, the ALJ provided specific and legitimate reasons for discrediting Dr.

15   McClelland's opinion of extreme limitations.

16        *2.  Dr. Kite*

17        Plaintiff alleges the ALJ purported to give great weight to Dr. Kite's opinion,

18   yet failed to credit his opinion that "[t]he patient is not capable, on both physical and

19   emotional basis [sic], to return to work full-time at any gainful employment activity

20   *as yet*."  ECF No. 13 at 17 (citing Tr. 469) (emphasis added).  To be found disabled,

1    a claimant must be unable to engage in any substantial gainful activity due to an

2    impairment which "can be expected to result in death or which has lasted or can be

3    expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

4    423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  Here,

5    the documents reflect that post-surgery, Plaintiff's knee condition improved over

6    time.  As noted herein, this opinion of Dr. Kite's was later modified as Plaintiff's

7    post-surgery condition improved.  In April 2011, Dr. Kite released Plaintiff to work

8    full-time as a fruit sorter.  Tr. 441.  The ALJ was not required to endorse in the RFC

9    any temporary limitations.

10        *3.  Dr. Weeks*

11        Next, Plaintiff faults the ALJ for finding that Plaintiff is less limited than Dr.

12    Weeks found.  ECF No. 13 at 17.  In August 2011, Dr. Weeks examined Plaintiff.

13    Tr. 679-82.  Plaintiff contends the ALJ should have credited Dr. Weeks' opinion that

14    Plaintiff's carrying capacity was "none."  ECF No. 13 at 18-19 (citing Tr. 682).

15    However, Plaintiff's treating doctor, Dr. Kite, released him for work as a fruit sorter,

16    and opined that Plaintiff could perform light to moderate lifting, which includes the

17    ability to carry.  Tr. 466.

18        Because an ALJ is not required to give more weight to the opinion of an

19    examining doctor than to a treating doctor, the ALJ properly gave more credit to the

20    opinion of Dr. Kite than of Dr. Weeks.  *See Holohan*, 246 F.3d at 1201-02

1  ("Generally, a treating physician's opinion carries more weight than an examining

2  physician's.").

3        Moreover, as the Commissioner points out, even if the ALJ erred by failing to

4  include the additional limitation in the RFC, it is clearly harmless since two of the

5  jobs identified by the vocational expert at step five, assembler and escort-vehicle

6  driver, do not require carrying.  ECF No. 22 at 12-13 (citing Dictionary of

7  Occupational Titles (DOT) 734.687-018 (job requirements of an assembler do not

8  include carrying), DOT 919.663-022 (job requirements of an escort-vehicle driver

9  do not include carrying)).  Thus, Plaintiff fails to show any harm.  *See Stubbs-*

10 *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("to the extent the ALJ's

11 RFC finding erroneously omitted Stubbs-Danielson's postural limitations (only

12 occasional balancing, stooping, and climbing of stairs), any error was harmless since

13 sedentary jobs require infrequent stooping, balancing, crouching, or climbing").

14        *4. Dr. Friedman*

15        Next, Plaintiff faults the ALJ for failing to credit examining psychologist Dr.

16 Friedman's opinion that Plaintiff was "anxious, scattered in his presentation,

17 demonstrated compromised psychological insight and questionable judgment," and

18 "would be unable to work and would remain unable to work until his symptoms

19 were properly treated."  ECF No. 16 at 13-14 (referring to Tr. 650-51).  An ALJ is

20 not required to give greater credit to the opinion of an examining source than to a

1   treating source.  *Holohan*, 246 F.3d at 1201-02.  An ALJ is not required to credit

2   opinions as to a claimant's temporary (i.e., before treatment) limitations.  *See Warre*,

3   439 F.3d at 1006 (symptoms effectively controlled with medication are not disabling

4   for purposes of determining eligibility for benefits).

5   **C. Residual Functional Capacity**

6          Finally, Plaintiff faults the ALJ for posing an incomplete hypothetical to the

7   vocational expert.  ECF No. 13 at 19-22.  Specifically, Plaintiff contends that the

8   ALJ erred by failing to include in the hypothetical various physical and mental

9   limitations.  Plaintiff contends this error requires remand, as an incomplete

10  hypothetical at step five is insufficient evidence to support the ALJ's finding that

11  Plaintiff is not disabled.

12         In determining the RFC, the ALJ is required to consider the combined effect

13  of all the claimant's impairments, mental and physical, exertional and non-

14  exertional, severe and non-severe.  42 U.S.C. § 423(d)(2)(B), (5)(B).  "An ALJ must

15  propound a hypothetical to a [vocational expert] that is based on medical

16  assumptions supported by substantial evidence in the record that reflects all the

17  claimant's limitations."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

18  "If the assumptions in the hypothetical are not supported by the record, the opinion

19  of the vocational expert that claimant has a residual working capacity has no

20  evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  "It is,

however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock*, 240 F.3d at 1165. Here, this Court finds the ALJ's hypothetical included the full extent of Plaintiff's limitations supported by substantial evidence in the record.

The ALJ found that the Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift and or carry 20 pounds occasionally and 10 pounds frequently; he can stand and or walk for 30-60 minutes intervals up to 6 hours per day; he can sit without restrictions; he can occasionally kneel, climbs stairs and ladders; he can frequently stoop, crouch, and balance; and he is limited to occasional interaction with the general public.

Tr. 26.

### 1. Mental Limitations

The sole mental limitation included in the RFC is a limitation to occasional interaction with the general public. Tr. 26. Plaintiff alleges he suffers additional mental limitations that the ALJ failed to include in his RFC assessment.

### a. Dr. Covell and Dr. Wolfe

As support, Plaintiff cites agency disability determinations by Dr. Covell dated September 2011 (Tr. 80-82), and by Dr. Wolfe, dated February 2012 (Tr. 115-17). ECF No. 13 at 20. The ALJ gave some weight to these opinions, Tr. 32, and incorporated the social limitation assessed, because he found the evidence supports such a social limitation. The ALJ found the evidence did not, however, support the greater cognitive difficulties assessed by these agency reviewing professionals. Tr.

32.  As previously noted, the ALJ correctly found that the evidence overall, including the opinions of treating doctors that Plaintiff is able to work, does not support greater mental limitations.  Moreover, Plaintiff did not challenge the ALJ's finding, discounting Dr. Covell and Dr. Wolfe's opinions.  As such, he cannot show that the ALJ erred in omitting these limitations.  *See Carmickle*, 533 F.3d at 1161 n.2.

### b.  Dr. Friedman

Plaintiff alleges that the ALJ should have credited Dr. Friedman's February 2011 opinion that Plaintiff could not work until he received mental health treatment. ECF No. 13 at 17 (citing Tr. 643-53).  This argument ignores the fact that Plaintiff has never obtained mental health treatment, did not consistently take prescribed psychotropic medication, was terminated from physical therapy for failing to attend, and was terminated from the practice by his own treating physician, Dr. Kite, for medical noncompliance.  *See e.g*., Tr. 434, 838, 842.  Dr. Friedman's opinion that Plaintiff's ability to work could be restored with treatment does not mean the ALJ was required to find that Plaintiff is disabled.  *See Warre,* 439 F.3d at 1006 (symptoms controlled effectively by medications are not disabling).  Further, inconsistencies between Plaintiff's alleged limitations and his lack of compliance with treatment, provided a permissible, legitimate reason for discounting Plaintiff's

1    credibility, as described above, and do not support greater limitation.  *Tommasetti,*

2    533 F.3d at 1039.

3        *c. Dr. McClelland*

4        Plaintiff reiterates that the ALJ failed to properly weigh Dr. McClelland's

5    opinion and include Dr. McClelland's mental limitations.  However, the ALJ need

6    only include credible limitations supported by substantial evidence.  *Batson*, 359

7    F.3d at 1197 (holding that the ALJ is not required to incorporate evidence from

8    discounted medical opinions into the RFC).

9      *2. Physical Limitations*

10       Plaintiff cites records showing additional physical limitations that he alleges

11   the ALJ should have included in the RFC assessment, specifically notes from: James

12   Hazel, M.D., in November 2010 (Tr. 435); Dr. Kite in March 2011 (Tr. 837); and

13   Dr. Weeks in August 2011 (Tr. 679-82).  Plaintiff also contends that Dr. Kite limited

14   Plaintiff to standing or walking only occasionally, "1-3 hours," in an eight-hour

15   workday, and the ALJ erred by failing to incorporate this limitation into the assessed

16   RFC.  ECF No. 26 at 4-5.

17

18

19       *a. Dr. Hazel*

20

Plaintiff contends that the ALJ should have incorporated into his hypothetical the following limitation set forth by his treating physician, Dr. Hazel: limit standing and walking to 10-15 minutes per hour and no climbing, squatting, kneeling, crawling, or crouching. ECF No. 13 at 21 (citing Tr. 30, 435). In November 2010, when Dr. Hazel set forth the limitations above, Dr. Hazel noted that Plaintiff was less than three months post-knee surgery. Tr. 435. However, by February 2011, Dr. Hazel opined Plaintiff could work as a fruit sorter. Tr. 434. The ALJ appropriately relied on Dr. Hazel's later opinion, after Plaintiff had recovered from knee surgery, that Plaintiff was able to work. The ALJ was not required to incorporate the November 2010 temporary limitations into the hypothetical posed to the vocational expert.

### b. Dr. Kite

Plaintiff contends that the ALJ should have incorporated into his hypothetical the following limitations set forth by his treating physician Dr. Bruce Kite: limit standing and walking to 1-3 hours a day. ECF No. 13 at 21. In March 2011, Dr. Kite opined that Plaintiff should be limited (for three months) to modified work duty, with unlimited sitting, due to restricted right knee movement. Tr. 837. Subsequently, Dr. Kite released Plaintiff to return to work as an agricultural sorter. Tr. 441. Dr. Kite also noted that Plaintiff was very angry that he (Dr. Kite), like Dr. Hazel, had also released Plaintiff to work as an agricultural sorter, and Plaintiff

refused to work as a sorter.  Tr. 441, 456, 838.  Accordingly, the ALJ was not

required to incorporate the March 2011 temporary limitations into the hypothetical

posed to the vocational expert.

Moreover, the ALJ limited Plaintiff to standing or walking for 30-60 minute

intervals up to six hours per day, with unlimited sitting.  Tr. 26.  Two of the

occupations identified by the vocational expert at step five are sedentary: assembler

and semiconductor bonder. Tr. 33.  Both are consistent with Dr. Kite's opinion.

Plaintiff identifies no greater limitations that are supported by the record than those

assessed by the ALJ.

c. *Dr. Weeks*

Dr. Weeks examined plaintiff in August 2011.  Tr. 679-82.  Plaintiff alleges

the ALJ erred when he failed to include Dr. Weeks' limitation of "maximum

carrying capacity[:] none."  ECF No. 13 at 18-19, citing Tr. 682.

As an initial matter, the ALJ discredited this opinion, as it conflicted with

treating physician Dr. Kite's assessment.  Tr. 496 (Dr. Kite opined that Plaintiff

could perform light to moderate lifting, which would include the ability to carry.).

The ALJ need only include credible limitations supported by substantial evidence.

*Batson*, 359 F.3d at 1197 (holding that the ALJ is not required to incorporate

evidence from discounted medical opinions into the RFC).

Moreover, the Commissioner responds that, because carrying is normally associated with a combination of lifting and walking, and the ALJ limited Plaintiff's walking, error if any is harmless.  ECF No. 22 at 12-14.  The Commissioner also points out that two of the jobs the vocational expert identified at step five, assembler and escort-vehicle driver, do not require carrying.  ECF No. 22 at 12-13.  Error, if any, therefore appears harmless since, if corrected, it would have no effect on the outcome.  Plaintiff has not proffered any persuasive argument that a more significant carrying limitation would prevent him from performing these jobs.  *See Stubbs-Danielson*, 539 F.3d at 1174 (any error by ALJ in omitting postural limitations was harmless since sedentary work only requires these infrequently).

The ALJ appropriately included the limitations supported by substantial evidence in the record.  Plaintiff alleges that the ALJ should have weighed the evidence differently, but the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

1

## CONCLUSION

2      After review, the Court finds that the ALJ's decision is supported by

3 substantial evidence and free of harmful legal error.

4      **IT IS ORDERED:**

5      1.  Defendant's motion for summary judgment (ECF No. 22) is **GRANTED.**

6      2.  Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED**.

7      The District Court Executive is directed to file this Order, enter **Judgment**

8 **for Defendant**, provide copies to counsel, and **CLOSE** the file.

9      DATED this 31st day of March, 2016.

10

11

12                          _S/Mary K. Dimke_
                            MARY K. DIMKE
13              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20